UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LADON D. MOORE,

        Plaintiff,

v.

UNKNOWN JOHNSON et al.,

        Defendants.
_____/

Case No. 1:23-cv-1220

Honorable Robert J. Jonker

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee,

Manistee County, Michigan. Plaintiff sues Resident Unit Manager Unknown Johnson, Unknown Part(y)(ies) named as ECF Transportation Staff on July 21, 2022, Mental Health Unit Chief Unknown Majerczyk, Assistant Deputy Warden Unknown Erway, and Assistant Deputy Warden Unknown Clouse. Plaintiff sues Defendants in their individual and official capacities.

In his complaint, Plaintiff alleges that Defendant Johnson retaliated against him by telling Plaintiff to go back to "one block" even though she knew that Plaintiff was awaiting a transfer to the Bellamy Creek Facility (IBC) because Plaintiff had filed grievances against her and other staff. (ECF No. 1, PageID.4.) Thereafter, Defendants Erway, Johnson, and Majerczyk placed Plaintiff in an observation cell because they felt that he was losing too much weight. Plaintiff argued that he was fasting for religious reasons. (*Id.*) In the months that followed, none of the Security Classification Committee (SCC) members requested that Plaintiff's weight be checked. Plaintiff further states that there was never any medical authorization or request that Plaintiff be placed in an observation cell. (*Id.*)

Plaintiff filed a grievance against health care officials because he felt he was losing weight, and in response, Plaintiff was provided with a weight record from health care showing that Plaintiff weighed 144 pounds on August 12, 2022, 145.8 pounds on August 15, 2022, 144.8 pounds on August 16, 2022, and 143.4 pounds on August 22, 2022. (*Id.*, PageID.5; ECF No. 1-4.) The step I grievance response sets forth Plaintiff's weights as detailed above and states that Plaintiff refused to be weighed or to have his vital signs checked on numerous dates in August and September of 2022. Plaintiff was advised that his participation was needed to determine if there was anything wrong with him. (ECF No. 1-4.) Plaintiff asserts that this shows that the reason for placing him in an observation cell was false and that Defendants intentionally interfered with his religious fast.

2

(*Id.*) In addition, Plaintiff states that his placement in an observation cell caused mental suffering and depression, which contributed to a later suicide attempt. (*Id.*, PageID.6.)

Plaintiff also alleges that on July 21, 2022, Defendants Unknown Part(y)(ies) subjected Plaintiff to cruel and unusual punishment, deliberate indifference, and inhumane conditions. Specifically, Plaintiff states that on July 21, 2022, Defendants Unknown Part(y)(ies), identified as ECF Transportation Officers, were taking him to an offsite medical appointment at Spectrum Hospital for a urology biopsy when they suddenly veered off to the left and then turned right and went around a sign and onto a closed road. (*Id.*, PageID.7.) Plaintiff began to panic and begged not to be killed. The driver was talking on the phone and pulled over next to a grassy area. Plaintiff again said, "Please don't kill me." (*Id.*) After a few minutes, the driver hung up the phone and pulled away from the side of the road and made a U-turn, telling Plaintiff to calm down, that he had just made a wrong turn. (*Id.*, PageID.7–8.) The driver then proceeded to travel down some side roads for a time and Plaintiff panicked again, trying to open the door and begging for his life. The driver again cautioned Plaintiff to calm down and stated that he had just missed his turn. (*Id.*, PageID.8.)

Eventually, the vehicle arrived at Spectrum hospital and the driver told Plaintiff that if he acted up, they were not going in. Plaintiff agreed to be calm, but once inside Plaintiff asked both the specialist and the assistant to call the police. Both refused because the driver explained that Plaintiff was upset. (*Id.*, PageID.9.) On the way out, Plaintiff told the receptionist to call the police, and the driver became angry and yanked at Plaintiff's chains. During the drive back to ECF, the vehicle stayed on paved roads and when they arrived at the prison the driver said, "You did not die did you?" (*Id.*) Once in his cell, Plaintiff requested mental health assistance by submitting a health care kite because of the traumatic experience. (*Id.*) Plaintiff did not receive a response and

approximately one month later, Defendant Majerczyk told Plaintiff that he was no longer part of the Corrections Mental Health Program. (*Id.*, PageID.10.)

Plaintiff states that Defendants violated his rights under the First and Eighth Amendments. Plaintiff seeks compensatory, punitive, and nominal damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

4

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**III.   Impact of Moore's Prior Case**

**A.  Moore's First Lawsuit**

In the present action, Plaintiff raises the same basic claims against the same Defendants as he did in a case that he previously filed in this Court: *Moore v. Johnson et al.* (*Moore I*), No. 1:22-cv-872 (W.D. Mich.). Specifically, in *Moore I*, Plaintiff sued MDOC Director Heidi Washington and the following ECF staff: Unknown Transportation Officers, Warden Unknown Burgess, Unknown 5-Block Nurses, Resident Unit Manager Unknown Johnson, Assistant Deputy Warden Unknown Erway, Assistant Deputy Warden Unknown Clouse, Mental Health Service Chief Brian Majerezyk, and Unknown 5-Block Segregation Officers. *See Moore I*, No. 1:22-cv-872 (W.D. Mich. Feb. 14, 2023), (ECF No. 26, PageID.139). In the opinion dismissing *Moore I*, the Court summarized Plaintiff's complaint as follows:

> In his original complaint, Plaintiff asked that the Court enter a "preliminary injunction that would protect [Plaintiff] from any future harm when transfer[red] from ECF to Bellamy Creek Correctional Facility (IBC), protective custody (PC)." (Compl., ECF No. 1, PageID.1 (internal quotation marks omitted).) Subsequently, Plaintiff was transferred to IBC. (*See* ECF No. 19.) After Plaintiff's transfer to IBC, he filed his amended complaint, and he again asks the Court to award injunctive relief based upon several incidents at Plaintiff's former correctional facility—ECF. (Am. Compl., ECF No. 23, PageID.130.)
>
> In the amended complaint, Plaintiff alleges that, after writing a grievance against Defendants 5-Block Segregation Officers at ECF, Plaintiff saw these Defendants tampering with Plaintiff's food. (*Id.*, PageID.127.) Plaintiff now suffers from an "unsolvable and unspecified" medical condition involving his stomach. (*Id.*)

5

> Despite knowing that there was a "hit on [Plaintiff's] life in 1-Block," Defendant Johnson asked Plaintiff to return to 1-Block on an unspecified date. (*Id.*) Thereafter, other prisoners threatened Plaintiff's life "if transferred with [Plaintiff] to IBC." (*Id.*)
>
> At some unspecified date, Defendants Clouse, Erway, Majerzyk, and Johnson placed Plaintiff in an observation cell without medical authorization on the grounds that Plaintiff was not eating enough. (*Id.*, Page ID.128.) Plaintiff alleges that this was done in retaliation for Plaintiff filing grievances against Defendants 5-Block Segregation Officers. (*Id.*) Although Plaintiff told Defendants Clouse, Erway, Majerzyk, and Johnson that he was fasting for religious reasons, Defendants "did [not] care." (*Id.*)
>
> On July 21, 2022, Defendant ECF Transportation Officers took Plaintiff down a dirt road with a "closed road sign on it," causing Plaintiff mental distress. (*Id.*)
>
> Plaintiff alleges that Defendant Burgess failed to investigate and supervise his staff with respect to the foregoing events. (*Id.*) Plaintiff also wrote to Defendant Washington about his complaints against Defendants 5-Block Segregation Officers and ECF Transportation Officers. (*Id.*, PageID.128–29.)
>
> Finally, Plaintiff alleges that in September and October of 2022, Defendants 5-Block Nurses tampered with Plaintiff's medication, causing Plaintiff to vomit, lose his balance, and experience headaches. (*Id.*, PageID.29.)

*Id.*, (ECF No. 26, PageID.139–41 (footnotes omitted)).

On preliminary review of *Moore I*, as required by the PLRA, the Court concluded that Plaintiff had failed to state a claim against MDOC Director Heidi Washington and, that as to the other *Moore I* Defendants, Plaintiff's amended complaint, seeking only injunctive relief, was moot because he had been transferred to a new correctional facility. *See id.*, (ECF No. 26, PageID.144–46). The Court dismissed *Moore I* for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), *id.*, (ECF No. 26, PageID.147), and the Court issued a judgment dismissing the action with prejudice. *Id.*, (ECF No. 28, PageID.149.)

6

B. **Claim Preclusion**

Are the claims asserted by Plaintiff in this case barred by the doctrine of claim preclusion? This doctrine provides:

> if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies—not only with respect to every matter that was *actually* litigated in the first matter, but also as to every ground of recovery that *might* have been presented.

*Action Distrib. Co. v. Int'l Bhd. of Teamsters Loc. 1038*, 977 F.2d 1021, 1026 (6th Cir. 1992) (emphasis in original) (citation omitted); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); see also *Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). That is, "[u]nder the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues *that were* or *could have been raised in that action*." *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 480 (6th Cir. 2014) (emphasis added) (citation omitted).

Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order to apply the doctrine of claim preclusion, the court must find that:

> (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.

*Heike*, 573 F. App'x at 480 (citation omitted). An action that is barred by res judicata is legally frivolous. *See, e.g.*, *Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001); *Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001).

At least two of the elements are established. The present action involves the same parties or their privities and presents issues that were "actually litigated or which should have been litigated in the first action," and the two suits share an identity of claims because the claims stem from the same set of operative facts. *See Heike*, 573 F. App'x at 480 (citation omitted). As to the shared identity of the two suits, the United States Supreme Court has held that "[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action *depends on factual overlap*." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) (emphasis added) (citations omitted). "Two suits are for or in respect to the same claim, . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 317. *Moore I* and the present case involve the same operative facts, and Plaintiff could have sought monetary damages in *Moore I* if he wanted to seek this type relief for his claims arising out of the operative facts.

The third element of a final decision on the merits is the remaining question. The original action was certainly dismissed and judgment entered. But the basis of decision was mootness, an Article III jurisdictional issue, not a determination on the lack of substantive merit.[1] A dismissal for mootness is not ordinarily sufficient to trigger claim preclusion. *See, e.g.*, *Fieger v. Corrigan*, 602 F.3d 775, 777—78 (6th Cir. 2010); *Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05-CIV-4806, 2007 WL 3254393, at *4 (S.D.N.Y. Nov. 1, 2007). Where Plaintiff had the ability to

---

[1] The decision regarding Director Washington was substantive, but Moore has not joined the Director in this action.

cure mootness by the simple expedient of amending his Complaint to ask for the damages he is now seeking, there is room to argue that preclusive effect should apply. *Cf. United States v. Muningwear, Inc.*, 340 U.S. 36, 41 (1950) (applying res judicata against the United States because it "slept on its rights" and was now asking the Court to do what it could have done "by orderly procedure" on its own). But it is not necessary to reach that issue here because Moore's claims fail in their merits.

## IV.     Substantive Review of Claims

Plaintiff's complaint is properly dismissed because his underlying claims fail to state any claim upon which relief may be granted.

### A.     First Amendment

#### 1.     Retaliation

Plaintiff alleges that Defendants Erway, Johnson, and Majerczyk, who were members of the SCC, retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff contends that Defendant Johnson retaliated against him by telling Plaintiff to go back to "one block" because Plaintiff had filed grievances against her and other staff. Plaintiff

9

also appears to be asserting that Defendants Erway, Johnson, and Majerczyk, in their roles and SCC members, retaliated against him by placing him in an observation cell, which interfered with Plaintiff's religious fast. Plaintiff notes that no SCC members requested that his weight be checked and that there was never any medical authorization or request for his placement in an observation cell. However, Plaintiff also alleges that his weight was checked and that he weighed 144 pounds on August 12, 2022, 145.8 pounds on August 15, 2022, 144.8 pounds on August 16, 2022, and 143.4 pounds on August 22, 2022. Plaintiff appears to believe that this shows that the stated reason for placing him in an observation cell was false. Plaintiff contends that his placement in observation interfered with his religious fast.

Plaintiff's retaliation claims are entirely conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff has not presented any facts to support his conclusion that Defendants retaliated against him

because he filed a grievance or grievances, or even that the motive for his placement in observation was improper.[2]

Moreover, Plaintiff's vague assertion that Defendant Johnson told him to "go back to one block" suggests, at most, some vague threat, which is insufficient to show adverse action. *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Furthermore, although in *Hill v. Lappin*, the Sixth Circuit held that transfer from general population to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action, *Hill*, 630 F.3d at 474–75, Plaintiff fails to allege sufficient facts to show that his placement in an observation cell constituted an adverse action. Specifically, Plaintiff fails to allege any facts about the specific nature of his confinement in the observation cell. Plaintiff alleges in a conclusory manner that such placement caused "mental suffering and depression" and interfered with his religious fast; however, he fails to allege any facts about the specific conditions of his confinement

---

[2] The Court notes that according to Plaintiff's biographical information page on the MDOC Offender Tracking Information System, Plaintiff is 5 feet 8 inches tall and weighed 155 pounds on September 16, 2021. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber =178814. Therefore, based on the allegations in his complaint, it appears that Plaintiff had lost approximately 10 pounds as of August of 2022. Such a finding would appear to support Defendants Erway, Johnson, and Majerczyk's assertion that his placement in observation was motivated by a concern over Plaintiff's weight loss, rather than a desire to retaliate against him. The Court provides this information as background and does not rely on it in reaching its decision.

in this cell or how specifically his fast was interfered with. Instead, Plaintiff relies on conclusory allegations, which without specific factual allegations, fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims will be dismissed.

### 2. Free Exercise

Liberally construing Plaintiff's complaint, it appears that he is claiming that his placement in an observation cell interfered with his ability to fast for religious reasons. The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

To the extent that Plaintiff is asserting a denial of his right to freely exercise his religious beliefs, such a claim is entirely conclusory. As stated above, conclusory allegations of

12

unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff fails to allege the nature of his religious beliefs, the reason for his fasting, or any specific conduct on the part of Defendants that infringed upon this practice or belief. Under these circumstances, Plaintiff has failed to allege any facts to support his free exercise claim. Accordingly, this claim will be dismissed.

### B. Eighth Amendment

Plaintiff states that his Eighth Amendment rights were violated by his placement in an observation cell, his treatment while he was being transported to an offsite medical appointment, and by the denial of requested mental health care to address the trauma he experienced on the journey to his offsite appointment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

(per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of

14

recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff fails to allege any facts showing that his placement in an observation cell subjected him to conditions which posed a substantial risk of serious harm because he fails to allege any facts about the specific nature of his confinement there. Nor does Plaintiff allege any facts showing that he was at a risk of serious harm while being transported to his offsite appointment. Plaintiff seems to believe that Defendant Unknown Party who was driving the transport was lying about missing his turn and instead was taking Plaintiff to a remote location in order to harm Plaintiff in some way. However, Plaintiff's subjective belief that he was at risk is completely unsupported by Plaintiff's recitation of the facts.

With respect to Plaintiff's claim that Defendant Majerczyk improperly denied him mental health treatment following his offsite medical appointment, the Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). Plaintiff's claim that he was denied necessary mental health care is entirely conclusory. Plaintiff states that he suffered from trauma and depression, and that he later attempted suicide. However, Plaintiff fails to make any specific factual allegations regarding his symptoms, the alleged suicide attempt, or whether he made any additional requests for health care services beyond the single kite on July 21, 2022, the date of his offsite appointment. Plaintiff also fails to allege any facts about whether he informed Defendant Majerczyk about his mental health

15

care needs. Under these circumstances, Plaintiff fails to show that Defendant Majerczyk knew of, let alone disregarded, Plaintiff's serious medical needs. As stated previously, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims will be dismissed.

## V.   Pending motions

### A.   Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. (ECF No. 3) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 3) therefore will be denied.

### B.   Motion for a Polygraph Examination

Plaintiff has filed a motion for a polygraph examination (ECF No. 4) to prove that the allegations in his complaint are truthful.

16

"The Federal Rules of Civil Procedure do not provide for discovery in the form of compelling polygraph examinations of parties or other individuals . . . ." *Sango v. Johnson*, No. 13-12808, 2014 WL 4658320, at *2 (E.D. Mich. May 22, 2014), *report and recommendation adopted*, 2014 WL 4658385 (E.D. Mich. Sept. 17, 2014). "[T]he Federal Rules of Civil Procedure establish tools for obtaining discovery through a party's sworn testimony, *see, e.g.*, Fed. R. Civ. P. 30 (depositions by oral examination), 31 (deposition by written questions), 33 (interrogatories) and 36 (requests for admission), compulsory polygraph tests are not among those tools." *Johnson v. Ohio Dep't of Rehab. and Corr.*, No. 2:13-cv-583, 2014 WL 5782939, *2 (S.D. Ohio Nov. 6, 2014). The plaintiff in *Johnson* wanted a polygraph examination "to prove that he is telling the tru[th]." *Id*. at *3. The *Johnson* court denied that relief, explaining:

> Plaintiff had the opportunity to submit an affidavit or declaration detailing his sworn testimony. Indeed, plaintiff's verified Complaint constitutes such a document. The results of a polygraph test, which are not always admissible in evidence, are not critical to the presentation of a party's claims. *Cf. Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir.1987) ("Generally, in the absence of an agreement and/or stipulation between the parties to the contrary, results of polygraph examinations are inadmissible into evidence.").

*Id*. For the same reasons, the Court will deny Plaintiff's request for a polygraph examination.

### C.    Motion to Amend Regarding United States Magistrate Judge Consent

Plaintiff has filed a motion to amend, seeking to amend his complaint to withdraw his consent to a United States Magistrate Judge conducting all proceedings in his case. (ECF No. 16.) As set forth in this opinion, the undersigned, a United States District Judge, has made all decisions regarding the disposition of Plaintiff's case. Therefore, Plaintiff's motion (ECF No. 16) will be denied as moot.[3]

---

[3] The Court notes that Plaintiff provides no legitimate reason to withdraw his consent to a United States Magistrate Judge conducting all proceedings in this case. Instead, Plaintiff appears to believe that the Court must respond to his case within a certain period of time, and he is unhappy

**Conclusion**

For the reasons set forth above, Plaintiff's motion for the appointment of counsel (ECF No. 3) and motion for a polygraph examination (ECF No. 4) will be denied. Further, Plaintiff's motion to amend, seeking to amend his complaint to withdraw his consent to a United States Magistrate Judge conducting all proceedings in his case, (ECF No. 16) will be denied as moot.

Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), as legally frivolous because it is barred by the doctrine of *res judicata* and for failure to state a claim. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:    February 27, 2024          /s/ Robert J. Jonker
                                                                     Robert J. Jonker
                                                                     United States District Judge

---

that the Court has not done so. Plaintiff is mistaken. Although the Federal Rules of Civil Procedure set forth deadlines for responses by parties in civil lawsuits, such response deadlines are not appliable to the Court. The Court addresses cases and motions in due course, and Plaintiff's impatience is not a legitimate reason to withdraw his consent to a United States Magistrate Judge conducting all proceedings in this case. Nonetheless, the undersigned, a United States District Judge, has made all decisions regarding the disposition of Plaintiff's case, as set forth in this opinion.